UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DONALD RALEIGH,

              Petitioner,

                                       Case Number: 18-12949

v.                                   Honorable Linda V. Parker

THOMAS WINN,

              Respondent.

_____/

## OPINION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS,
## DENYING A CERTIFICATE OF APPEALABILITY, AND
## GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Donald Raleigh is presently in the custody of the Michigan Department of

Corrections pursuant to convictions for first-degree child abuse and felony murder.

He has filed a pro se petition for the writ of habeas corpus pursuant to 28 U.S.C.

§ 2254. Petitioner raises four grounds for relief: (i) the trial judge engaged in

misconduct by finding Petitioner's custodial statement admissible; (ii) the

prosecutor engaged in misconduct by arguing for the statement's admissibility; (iii)

defense counsel was ineffective; and (iv) appellate counsel was ineffective in

failing to raise these claims on direct review. The Court finds that Petitioner's

claims do not warrant relief and denies the petition.

1

## I.       Background

In 2012, four-month-old Dominic Carrette died as a result of massive blunt force trauma to his head.  Petitioner (who was not Dominic's father) lived with Dominic's mother, Ashley Spencer, and cared for Dominic and his own four-year old daughter while Spencer was at work.  (ECF No. 7-5 at Pg ID 588-89.)  Around 2:30 p.m. on October 25, 2012, Petitioner called 911 and reported that Dominic had stopped breathing.  (ECF No. 7-6 at Pg ID 628).  Oakland County Sheriff's Deputy Arnold Terrell was the first law enforcement officer to arrive at the home. (*Id.* at Pg ID 639.)  Deputy Terrell saw Dominic lying face-up on the living room floor and Dominic appeared to be "unresponsive or deceased."  (*Id.* at Pg ID 646.)

Deputy Terrell testified that Petitioner gave three different versions of what happened to Dominic.  (*Id.* at Pg ID 650-657.)  First, Petitioner said he went upstairs to check on his sleeping daughter and, when he came back downstairs, discovered that Dominic was not breathing.  (*Id.* at Pg ID 650-51.)  Petitioner next told Deputy Terrell that Dominic was seated in a bouncy seat when Petitioner heard a gurgling sound.  He reached for Dominic who was "limp as a noodle" and had a white substance coming out of his mouth.  (*Id.* at Pg ID 653.).  Petitioner called 911 and administered CPR.  Finally, Petitioner told Deputy Terrell that, two days earlier, Dominic rolled off the couch and hit his face, mouth, and nose against the corner of the coffee table.  (*Id.* at Pg ID 656-57.)

2

Several witnesses testified about the severity of Dominic's injuries. Brandon Township paramedic David Castle testified that when he arrived at the residence, Dominic was not breathing and had no vital signs.  (*Id.* at Pg ID 700.) Based on his examination, Castle concluded that Dominic had been without vital signs for more than five to six minutes.  (*Id.* at Pg ID 713.)  Castle was unable to feel Dominic's skull because of extensive swelling.  (*Id.* at Pg ID 714.)  He described Dominic's head as feeling "like a water balloon."  (*Id.*)  Castle was unable to revive Dominic during transport to the hospital.  (*Id.* at Pg ID 719.)

Dr. Alan Janssen, an emergency medicine specialist, treated Dominic at the hospital.  (*Id.* at Pg ID 803.)  Dominic was not breathing, had no heart rate, and had obvious and significant head trauma.  (*Id.* at Pg ID 804-05.)  Dr. Janssen also likened Dominic's head to a "water balloon" and from this concluded that Dominic's head was "full of blood."  (*Id.* at Pg ID 805-06.)  He pronounced Dominic dead at 3:30 p.m.  (*Id.* at Pg ID 812.)  Dr. Janssen testified that in his twenty years of practice he had never seen a baby with this much head trauma.  (*Id.* at Pg ID 823.)  Dr. Janssen expected that, given the extent of injuries, Dominic likely died within minutes of sustaining the injuries.  (*Id.* at Pg ID 837.)

Dr. Bernardino Pacris, deputy medical examiner for Oakland County, performed an autopsy on October 26, 2012.  (*Id.* at Pg ID 851.)  Dr. Pacris concluded that Dominic died of "blunt force head trauma sustained when his head

3

was struck multiple times on a hard surface by another person" and that the manner of death was homicide.  (*Id.* at Pg ID 874-75.)  Dr. Pacris testified that "a tremendous amount of energy" is needed to fracture an infant's skull.  (*Id.* at Pg ID 873.)

The defense did not present any witnesses.

An Oakland County Circuit Court jury found Petitioner guilty of first-degree felony murder, Mich. Comp. Laws § 750.316(1)(b), and first-degree child abuse, Mich. Comp. Laws § 750.136b(2).  The state court sentenced Petitioner as a fourth habitual offender to life imprisonment without the possibility of parole for the felony-murder conviction, and 75 months to 125 years for the first-degree child abuse conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising four claims: his custodial statement was involuntary, the trial court failed to administer the oath required under Mich. Comp. Laws § 768.16, he should not have been convicted of first-degree felony murder and the underlying felony, and defense counsel was ineffective.  The Michigan Court of Appeals affirmed his convictions.  *People v. Raleigh*, No. 317175, 2014 WL 6956682 (Mich. Ct. App. Dec. 9, 2014).  Petitioner filed an application for leave to appeal in the Michigan Supreme Court.  He raised the same claims raised in the court of appeals and these additional claims: the police and trial judge violated his rights at the *Walker*

4

hearing and the prosecutor committed misconduct by referencing Petitioner's confession when the confession was never admitted into evidence. The Michigan Supreme Court denied leave to appeal. *People v. Raleigh*, 868 N.W.2d 872 (Mich. 2015).

Petitioner filed a motion for relief from judgment in the trial court raising these claims: (i) judicial misconduct, (ii) prosecutorial misconduct, (iii) ineffective assistance of counsel, (iv) ineffective assistance of appellate counsel, and (v) cause and prejudice. The trial court denied the motion. (ECF No. 1 at Pg ID 49-62.) Both state appellate courts denied leave to appeal. *People v. Raleigh*, No. 338623 (Mich. Ct. App. Nov. 8, 2017); *People v. Raleigh*, 914 N.W.2d 919 (Mich. 2018).

Petitioner then filed the pending petition for the writ of habeas corpus. He seeks relief on these grounds:

> I. Judicial misconduct in violation of Petitioner's right to a fair trial as guaranteed by the Sixth Amendment.
>
> II. Prosecutorial misconduct which deprived Petitioner of a fair trial, due process, and equal protection of the law.
>
> III. Ineffective assistance of trial counsel in violation of Petitioner's Sixth Amendment right to competent counsel.
>
> IV. Ineffective assistance of appellate counsel in violation of Sixth Amendment guarantee of competent representation.

Respondent opposes the petition on the merits and also argues that part of Petitioner's first claim and his second and third claims are procedurally defaulted.

5

The court need not address the respondent's procedural defenses here. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)) (holding that "federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits").

## II.    Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs

when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.* A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This presumption is rebutted only with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III.  Discussion

The claims raised in the petition arise from Petitioner's custodial statement.

The trial court held an evidentiary hearing pursuant to *People v. Walker*, 374 Mich.

331 (1965),[1] to determine the admissibility of Petitioner's statement.  The

Michigan Court of Appeals provided this summary of the circumstances

surrounding the confession and its admissibility:

> After [Dominic] was taken to the hospital, defendant agreed to go with a police officer to the Brandon Township substation of the Oakland County Sheriff's Office, where he was questioned over the course of five hours while being recorded.  Defendant was placed into an interview room with a relatively comfortable chair and advised of his *Miranda*[] rights after a preliminary discussion, and he signed a *Miranda* waiver.
>
> After defendant was informed that [Dominic] had been pronounced dead, he asked to speak with a lawyer, and he was placed under arrest, handcuffed, and left alone in the interview room. Sometime thereafter, Detective Jennifer Harvey came in and talked to him.  Later on, defendant told Officer Greg Glover that he wanted to talk, and Glover made him confirm that he wished to speak without the presence of a lawyer.  Glover did not, however, readvise defendant of his *Miranda* rights.  Defendant thereafter told Glover that he dropped [Dominic] from five feet, causing [Dominic] to hit his head on concrete, and that he dropped him another time.  Before trial, defendant moved to suppress the DVD containing his custodial interrogations, arguing that his statements were involuntary. Following a hearing, the trial court entered an order denying defendant's motion.  The trial court noted that that [sic] prosecutor agreed it would not introduce defendant's statements to Harvey at trial

---

[1] *People v. Walker*, 374 Mich. 331 (1965) requires that an evidentiary hearing be conducted when a defendant challenges the admissibility of a confession.

and concluded that defendant's remaining statements were voluntary and admissible.

On the beginning of the third day of trial, defendant's counsel requested, outside the presence of the jury, that if the prosecution admitted portions of the DVD that recorded defendant's custodial interrogation with Glover, then the portions of the DVD containing defendant's custodial interrogation with Harvey should also be admitted under the rule of completeness. The trial court agreed with defendant, but the prosecutor did not introduce the DVD and rested its case. Defendant proceeded to rest without testifying or calling any witnesses.

*Raleigh*, 2014 WL 6956682, at *1-2.

## A.

Petitioner first asserts that the trial court's decision that the confession was admissible amounted to judicial misconduct. He maintains that the trial judge improperly held the *Walker* hearing in open court, should not have allowed a newspaper reporter in the courtroom during the hearing, and that the judge ultimately made a decision which was contrary to the evidence presented. (ECF No. 1 at Pg ID 54-57.)

Petitioner raised this claim in his motion for relief from judgment. The trial court found no judicial bias. The court noted that Petitioner could not establish any prejudice from the court's denial of the motion to suppress because the confession was never admitted at trial. (ECF No. 1 at Pg ID 54-55.) The court rejected Petitioner's argument that, if the court had ruled the statement inadmissible, he

9

could have provided the jury a plausible explanation about what happened to Dominic.  (*Id.* at Pg ID 55.)  The court also held that the *Walker* hearing was properly held in open court and there was no error or prejudice in allowing a reporter to attend the hearing.  (*Id.* at Pg ID 56-57.)  Petitioner alleged no specific instance where, during *voir dire*, a potential juror revealed awareness of Petitioner's confession.  (*Id.*)

An impartial judge is a necessary component of a fair trial.  *In re Murchison*, 349 U.S. 133, 136 (1955).  The Supreme Court explained the appropriate measure of judicial conduct as follows:

> [O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.  Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.  They *may* do so if they reveal an opinion that derives from an extrajudicial source; and they *will* do so if they reveal such a high degree of favoritism or antagonism as to make fair judgment impossible.

*Liteky v. United States*, 510 U.S. 540, 554 (1994) (emphasis in original).

On habeas review the inquiry focuses on whether the trial judge's conduct rendered the trial fundamentally unfair.  "To violate a defendant's right to a fair trial, a trial judge's intervention in the conduct of a criminal trial would have to reach a significant extent and be adverse to the defendant to a substantial degree."

10

*McBee v. Grant*, 763 F.2d 811, 818 (6th Cir. 1985).  Petitioner disagrees with the trial court's rulings, but he has not shown that the judge relied on extrajudicial sources in rendering his decisions or that he showed any degree of favoritism for the prosecution or antagonism toward the defense.  The *Walker* hearing transcript shows the trial judge listened to the testimony and arguments and, ultimately, gave a clear, carefully reasoned decision.  The Court sees no evidence of bias in the trial court's decision.

Neither did the trial court err in holding that the *Walker* hearing was appropriately held in open court.  "The ability to waive a constitutional right does not ordinarily carry with it the right to insist on the opposite of that right."  *Singer v. United States*, 380 U.S. 24, 34-35 (1965).  While a defendant may, under certain circumstances, waive his constitutional right to a public trial, "he has no absolute right to compel a private trial."  *Id.* at 35.  Petitioner also has not identified any point in the *voir dire* where a potential juror revealed exposure to pretrial publicity.

To the extent that Petitioner challenges the trial court's decision denying his motion to suppress the custodial statement, this claim is moot.  "Typically, the remedy for a *Miranda* violation is to exclude the tainted statement."  *United States v. Davis*, 531 F. App'x 601, 605 (6th Cir. 2013) (quotation omitted).  Where the inculpatory statement was not admitted into evidence at trial, there is "nothing to exclude and no remedy to grant."  *Id.*; *see also United States v. Sims*, 603 F. App'x

11

479, 493-84 (6th Cir. 2015) (finding appeal of suppression ruling moot because confession was not admitted at trial).

### B.

Petitioner next argues that the prosecutor committed misconduct in arguing for his statement's admissibility. The trial court held that the prosecutor did not engage in misconduct and, because the custodial statements were not introduced at trial, Petitioner did not meet his burden of showing he was prejudiced by any alleged misconduct. (ECF No. 1 at Pg ID 57.)

A prosecutor's improper comments violate a criminal defendant's constitutional rights if they "so infect[] the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). To constitute a due process violation, the prosecutor's conduct must have been "so egregious so as to render the entire trial fundamentally unfair." *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000) (citations omitted). "A prosecutor may rely in good faith on evidentiary rulings made by the state trial judge and make arguments in reliance on those rulings." *Cristini v. McKee*, 526 F.3d 888, 900 (6th Cir. 2008). This is so regardless of whether the state court's ruling was correct. *Frazier v. Huffman*, 343 F.3d 780, 792 (6th Cir. 2003).

Here, the prosecutor acted within her role as a prosecutor when she argued for the admission of Petitioner's statement—an argument the trial court found persuasive.  While Petitioner contends that the prosecutor's argument was unsupported by the evidence, he has not shown that the arguments were based upon intentional misstatements of law or fact.  In addition, Petitioner cannot show that the prosecutor's argument rendered his trial fundamentally unfair because his statement was not admitted.  Petitioner fails to show that the state court's decision denying relief on this claim was contrary to or an unreasonable application of Supreme Court precedent.

## C.

Petitioner next raises several ineffective assistance of defense counsel claims.  Specifically, Petitioner argues that counsel (i) should have offered a more effective argument against the admission of his confession, (ii) should have moved for a psychiatric examination to assess competency or to establish a basis for an insanity defense, and (iii) improperly assisted the prosecution's case by asking unfavorable testimony to be repeated, involuntary statements to be admitted, and by giving a closing argument that favored the prosecution.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687

13

(1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  A reasonable probability requires "that the likelihood be 'substantial,' not just 'conceivable.'"  *Taylor v. Patel*, --- F. App'x ----, 2021 WL 3520819, *5 (6th Cir. Aug. 11, 2021) (quoting *Cullen*, 563 U.S. at 189).  "Surmounting *Strickland*'s high bar is never an ... easy task," but it is "all the more difficult" to accomplish under AEDPA.  *Harrington*, 562 U.S. at 105 (quotation omitted).  AEDPA's and *Strickland*'s standards are "highly deferential," and "when the two apply in tandem, review is 'doubly' so."  *Id.*

Petitioner first argues that defense counsel was ineffective for "allow[ing] the Court to grant Prosecutor's desire to use Petitioner's confession while knowing the confession was taken in violation of *Miranda*."  (ECF No. 1 at Pg ID 13.)  The trial court denied this claim because Petitioner's confession was not introduced at trial and, therefore, he was not prejudiced by the ruling.  (*Id.* at Pg ID 60.)

This decision did not contravene or unreasonably apply *Strickland*.  The record shows that, during the suppression hearing, counsel cross-examined the

witnesses and, as reflected in final argument, understood the issues, and presented a cohesive, logical argument for suppression.  That his argument ultimately failed does not render his performance deficient.  *Hodge v. Haeberlin*, 579 F.3d 627, 645 (6th Cir. 2009) ("Counsel is not ineffective merely for failing to obtain a desired ruling from the court.").  In addition, as the state court noted, because the confession was not admitted at trial, Petitioner has not shown that the trial court's ruling prejudiced his defense.

Petitioner's argument that he was prejudiced because he would have testified in his own defense if the confession had been excluded is unpersuasive.  He fails to detail what his testimony would have been or how it would have benefitted the defense, particularly where the other evidence against him (e.g., Petitioner's varying explanations to Deputy Terrell of what happened to Dominic and his calm demeanor in response to Dominic's condition) was substantial.  Further, given that the confession was never presented to the jury, after the prosecution rested, Petitioner was not precluded from testifying if in fact it was his desire to do so.

Petitioner next argues that counsel was ineffective for failing to move for a psychiatric examination to assess his competency or to establish a basis for an insanity defense.  The trial court denied this claim without specific discussion of the merits.  This summary denial of Petitioner's claim, despite its brevity, is entitled to deference under § 2254(d).  Where a state court denies a claim on the

merits, but without explanation, "a habeas court must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with [Supreme Court precedent]." *Harrington*, 562 U.S. at 102. The burden of rebutting the "strong presumption" that counsel rendered adequate assistance "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quotation omitted). Other than asserting counsel should have moved for a psychiatric examination, Petitioner provides no justification or support for his argument that a competency inquiry was warranted. This is insufficient to rebut the presumption that counsel performed reasonably.

Petitioner also argues that counsel was ineffective because he assisted the prosecution's case by asking unfavorable testimony to be repeated, asked for admission of involuntary statements, and gave a closing argument that favored the prosecution. Petitioner identifies several instances in the transcript when counsel either asked for an answer to be repeated or generally asked that a witness be told to speak more loudly. Counsel was not acting outside the range of competent assistance by ensuring that he could hear the witnesses' testimony. Under certain circumstances, an attorney who is unable to hear trial proceedings and fails to act risks being found deficient.

16

Petitioner claims that defense counsel was ineffective for arguing that, if any portion of Petitioner's custodial statement was admitted, the entire custodial statement should be admitted.  The Court need not address *Strickland*'s first prong because the claim is more easily resolved by addressing *Strickland*'s prejudice prong.  *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").  No portion of Petitioner's custodial statement was introduced into evidence.  Accordingly, Petitioner cannot show that he was prejudiced by his attorney's argument and he fails to show that the state court's decision denying this claim was contrary to, or an unreasonable application of, clearly established federal law.

Lastly, Petitioner argues that his attorney's closing argument improperly advocated for a guilty verdict.  He first challenges counsel's statement that, "You can't end this tragedy with a guilty verdict against Kyle." (ECF No. 7-7 at Pg ID 933.)  Petitioner argues this statement "was basically telling the jury to reach a guilty verdict."  (ECF No. 7-19 at Pg ID 1329.)  This statement, read in context, was likely an attempt to ensure that the jury's verdict was not based on the tragic nature of the crime.  Defense counsel properly argued that, because nothing could undo the tragedy of Dominic's death, the jury was obligated to reach a verdict based upon the evidence presented.  Similarly, counsel's statement that "[a]ll of us

17

are outraged at what we saw in this case" was an acknowledgement of the terrible injuries suffered by Dominic and was quickly followed by a plea that the jurors not allow their emotions or sympathy to taint their decision.  (ECF No. 7-7 at Pg ID 937.)  It was prudent for counsel to recognize the visceral reaction some jurors may have had to the testimony about Dominic's injuries and to remind the jurors that emotions should not guide their analysis of the evidence.

Petitioner next challenges defense counsel's statement that, "Donald says I'm not guilty.  He says that in spite of the fact that he didn't testify."  (ECF No. 7-7 at Pg ID 933-34.)  Although awkwardly phrased, counsel was not, as Petitioner argues, inviting the jury to convict Petitioner on the basis of his decision not to testify.  To the contrary, counsel emphasized numerous times that Petitioner's decision not to testify could not factor into the deliberations or verdict.  Counsel's argument was not improper.

Counsel also said, "The prosecutor gave you some scenarios about what is not disputed and I think she was right on with much of what she said about that." (ECF No. 7-7 at Pg ID 939.)  He further stated: "I don't make up defenses for clients, it's whatever the facts are.  If the facts are there or not there, that's the argument.  But I don't make things up for anyone."  (*Id.*)  Petitioner maintains that defense counsel, in fact, had the "duty . . . to make up, create or manufacture a defense for [his] client … Anything less is ineffectiveness."  (ECF No.7-18 at Pg

18

ID 1330.)  To the contrary, it is not defense counsel's job to create or manufacture

a defense.  Instead, counsel must present the best possible defense consistent with

the circumstances of the case.  Here, Petitioner has not shown that defense counsel

failed to do just that.  Counsel was not ineffective for conceding that certain

arguments advanced by the prosecutor were supported by the evidence.  This

concession could have been a strategic attempt to gain the jury's trust, making it

more likely the jury would be persuaded by defense arguments.  The fact that the

defense was ultimately unsuccessful does not render counsel's approach deficient

and Petitioner fails to show a reasonable probability that counsel's closing

argument impacted the proceeding.

### D.

Petitioner's fourth claim asserts that his appellate attorney was ineffective

for failing to raise the claims raised in this petition on state court direct review.

Strategic and tactical choices regarding which issues to pursue on appeal are

"properly left to the sound professional judgment of counsel."  *United States v.*

*Perry*, 908 F.2d 56, 59 (6th Cir. 1990).  The Supreme Court has held that a

petitioner does not have a constitutional right to have appellate counsel raise every

non-frivolous issue on appeal.  *Jones v. Barnes*, 463 U.S. 745, 754 (1983).

"[T]here can be no constitutional deficiency in appellate counsel's failure to raise

meritless issues."  *Mapes v. Coyle*, 171 F.3d 408, 413 (6th Cir. 1999).  None of the

claims Petitioner argues his appellate attorney should have raised on appeal has been shown to have merit.  Therefore, counsel was not ineffective in failing to raise them.

## IV.   Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition. Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]" *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

The Court finds that jurists of reason could not debate the conclusion that Petitioner has failed to demonstrate an entitlement to habeas relief.  A certificate of appealability is denied.

The Court grants Petitioner leave to appeal in forma pauperis because an appeal could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Accordingly,

**IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed in forma pauperis on appeal if he chooses to appeal this decision.  28 U.S.C. § 1915(a)(3).

**IT IS SO ORDERED.**

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 14, 2021

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 14, 2021, by electronic and/or U.S. First Class mail.

s/Aaron Flanigan
Case Manager